UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DORRIS TRICE, III                                                                              PETITIONER

v.                                                                                    CASE NO. 3:13-CR-96-CRS

UNITED STATES OF AMERICA                                                                      RESPONDENT

**FINDINGS OF FACT
CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**

Dorris Trice, III, is a federal prisoner. In June of 2013, a federal grand jury seated in Louisville, Kentucky, returned a three-count indictment against Trice (DN1). This indictment resulted from the armed robbery of the Park Food Mart at 231 North 19th Street in Louisville, Kentucky, on March 3, 2013. On that date Trice, a convicted felon, entered the Food Mart carrying a .38 special revolver, which he used to rob the store while threatening to shoot the attendant, K.Q. After taking all of the money in the cash register, Trice fled the store and was chased down an adjacent alley where he fired three shots at several men who were following after him.

These events led to three charges in the indictment. Count 1 of the indictment charged Trice with the robbery of the Park Food Mart in violation of the Hobbs Act, 18 U.S.C. §1951. Count 2 of the indictment charged Trice with the possession of a firearm by a convicted felon along with the violation of the Armed Career Criminal Act (ACCA), 18 U.S.C. §§922(g)(1), 924(a)(2) and 924(e). Finally, count 3 charged Trice with brandishing and discharging a firearm during a crime of violence in violation of 18 U.S.C. §924(c).

Following his indictment, Trice appeared for arraignment in federal court before a magistrate judge where he was appointed counsel, Assistant Federal Defender Patrick J. Bouldin. Trice was detained pending trial following his entry of a plea of not guilty (DN 10). A jury trial was scheduled for Sept. 9, 2013; however, the District Court remanded the scheduled trial date after Trice expressed his desire to enter a change of plea pursuant to a plea agreement with the Government (DN 12).

On Sept. 3, 2013, Trice entered into a Rule 11(c)(1)(C) plea agreement (DN 13). Under the terms of the agreement, Trice agreed to enter a voluntary plea of guilty to counts 1 through 3 of the indictment (DN 13, p. 2, ¶3). He and the Government further agreed to the facts surrounding the robbery of the Food Mart along with Trice's history of prior state felony convictions. Trice's admitted criminal history included: convictions for three counts of burglary in the second degree in the Jefferson Circuit Court in Louisville, Kentucky, on Oct. 26, 2000 (Indictment 00-CR-0983-09); a conviction for escape in the second degree also in the Jefferson Circuit Court on June 10, 2002 (Indictment 02-CR-001262); and a final conviction for burglary in the third degree in the same court on Oct. 20, 2010 (Indictment 10-CR-3005).

Trice in his written plea agreement agreed that he understood that the charges in the federal indictment carried the combined minimum term of imprisonment of 25 years with the potential for a combined maximum prison term of life imprisonment (DN 13, p. 3, ¶4). Trice in paragraph 6 of the agreement acknowledged each of the various constitutional rights that he would surrender by pleading guilty. The United States for its part agreed in paragraph 9 that in return for Trice's guilty plea it would agree at the time of sentencing that a sentence of 25 years would be the appropriate disposition for his case (DN 13, p. 5, ¶9). The Government further

agreed that a reduction of three levels below the applicable guideline range for Trice's acceptance of responsibility under §3E1.1(a) and (b) would be appropriate.

In paragraph 10 of the agreement, the parties agreed that Trice would knowingly and voluntarily waive, not only his right to a direct appeal as provided by 18 U.S.C. §3742 and Fed.R.App.P. 4(b), but also would waive his right to contest or collaterally attack his conviction or the resulting sentence under 28 U.S.C. §2255, except for those claims based upon prosecutorial misconduct or ineffective assistance of counsel (DN 13, p. 5, ¶10). Trice also agreed to the forfeiture of the Charter Arms undercover .38 special revolver used in the Food Mart robbery (DN 13, pp. 5-6, ¶¶12, 13). He agreed to waive any potential double jeopardy claim he might have based upon the previously-mentioned civil forfeiture (Id., ¶15). Finally, Trice agreed not to oppose the imposition of a sentence that incorporated the disposition provided for by the plea agreement, nor to argue for any other sentence than the one to which he had agreed.

After the execution of the plea agreement Trice appeared before the District Court later that same day for a change of plea hearing (DN 37). Testifying under oath, Trice agreed that he understood what was happening in the courtroom, that he had talked with his appointed attorney, who believed Trice to be competent, and was able to assist his attorney in the defense of his case (DN 37, pp. 5-6). Trice agreed with the District Court that he had had sufficient opportunity to discuss his case with Attorney Bouldin and was satisfied with the advice that Bouldin had provided (Id., p. 6).

The District Court then advised Trice of his constitutional rights, which Trice confirmed that he understood (Id., pp. 7-8). Trice acknowledged that he had received a copy of the indictment, that he understood the charges and had reviewed them with his attorney (Id., pp. 7-

3

10). The prosecutor then explained the maximum and minimum potential penalties available under counts 1 through 3 of the indictment (Id., pp. 9-10). Trice agreed that he understood the maximum penalties available for each count (Id., p. 12). Finally, he acknowledged that he understood that because the sentence for count 3 must be served consecutively to the sentence imposed on counts 1 and 2 of the indictment, he faced a total minimum sentence of 25 years of imprisonment (Id., p. 13).

Trice denied that any person had threatened or forced him to enter a guilty plea (Id., p. 15). The prosecutor then set forth the terms of the plea agreement, which both Trice and Attorney Bouldin confirmed (Id., pp. 15-16). Trice acknowledged that by his plea agreement he was giving up his right to file a direct appeal of his conviction and sentence (Id., p. 18). He confirmed that by his agreement he also waived his right to bring a collateral attack, and that he understood that no one could make any promises that would bind the District Court to impose the recommended 25-year sentence agreed upon by the parties (Id., pp. 18-19).

The District Court then set out the factual basis for the guilty plea to each count of the indictment (Id., pp. 20-24). During this portion of the hearing, the prosecutor advised the Court that the Government was prepared to prove that prior to the armed robbery of the Food Mart on March 3, 2013, Trice had been convicted of three counts of burglary in the second degree in Indictment 00-CR-0983-09, which involved three separate offenses on three separate dates (DN 13, p. 20). In addition to those three prior burglary convictions, the Government also relied upon Trice's prior conviction for escape in the second degree in Indictment 02-CR-001262 and his felony conviction for burglary in the third degree in Indictment 10-CR-3005. The Government confirmed for the District Court that it was prepared to prove that all of the convictions took place in Jefferson County, Kentucky, and that all of the crimes were felonies (Id., p. 22).

4

When asked by the District Court if all that the prosecutor had stated was true in all respects, insofar as the facts of the charged offense and prior state felony convictions, Trice admitted to the truth of those facts (Id., p. 25). The Court accordingly concluded that a factual basis existed for his guilty pleas to counts 1 through 3 of the indictment and accepted his guilty plea to each count (Id., p. 25). A sentencing hearing was set then set for Dec. 5, 2013 (DN 40).

Trice returned with counsel to the District Court on that date for sentencing. Both parties acknowledged that they had examined the presentence report and had no objections to its contents (DN 40, p. 2). Trice directly confirmed that he had no objections (Id.). He further confirmed that he had reviewed the presentence report with his attorney and that there were no mistakes that he wished to bring to the attention of the Court (Id., p. 3). The Court then summarized the sentencing guidelines calculation, which consisted of an offense level of 31 with a criminal history category of VI, thereby providing for a sentencing range of 188 to 235 months with a mandatory minimum of 120 months under count 3 to be served consecutively with any other sentence (Id.).

Although the guidelines suggested a 188-month sentence for counts 1 and 2, the Court departed from the guidelines to impose a 180-month sentence on those counts to be served consecutively with a 120-month sentence as to count 3 to result in a 300-month total sentence as agreed to by the parties in their plea agreement (DN 40, p. 4). The District Court accepted the plea agreement and the sentence in accordance with it, thereby resulting in an 8-month variance in Trice's favor (Id., p. 4-5). The District Court further found that Trice did qualify as an armed career criminal and that such status would be reflected in his sentence.

On Dec. 13, 2013, the District Court entered a judgment and order that sentenced Trice to 180 months of imprisonment on count 1 and count 2 to be served consecutively with 120 months

5

of imprisonment for count 3 for a total sentence of 300 months to be followed by 3 years of supervised release (DN 25).

Trice did not take a direct appeal of his conviction. Instead, nearly two years later, on Nov. 5, 2015, he filed his present motion to vacate pursuant to 28 U.S.C. §2255 based on the recent decision of the U.S. Supreme Court announced in *Johnson v. United States*, __U.S.__, 135 S.Ct. 2551 (2015) (DN 35). The United States has filed a response in opposition to the motion in which it argues that *Johnson* does not apply to the facts of Trice's case, and that even if *Johnson* did have some application, Trice specifically waived the opportunity to collaterally attack his conviction as part of his plea agreement. Trice has not filed a reply and the time for doing so has no expired. Accordingly, the matter is ripe for consideration.

**CONCLUSIONS OF LAW**

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set forth one or more of three possible grounds for relief. *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011). The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. Id. (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979). When a statutory right is the basis for the §2255 challenge, the prisoner to obtain relief must show that the error qualified as "a fundamental defect which inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Here, Trice bases his §2255 motion entirely on the recent ruling announced in *Johnson*, 135 S.Ct. 2551 (2015) wherein the U.S. Supreme Court concluded that the so-called "residual clause" of the Armed Career Criminal Act violates due process under the Fifth Amendment because it is so vague that it "denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S.Ct. at 2557. More specifically, Trice argues that in his case the District Court improperly relied upon his prior 2002 conviction for escape in the second degree in Indictment 10-CR-3005 under the aforementioned residual clause of the ACCA to unlawfully enhance his sentence contrary to the new rule announced in *Johnson*. To state the matter as Trice does, "Petitioner's 'escape' state conviction falls within the 'residual clause' of the Armed Career Criminal Act, and [therefore] cannot be used as a predicate to enhance his sentence [following *Johnson*]." Trice insists that *Johnson* announces a new rule of constitutional law that has been made retroactive to cases on collateral review by the U.S. Supreme Court that was previously unavailable - - a circumstance that allows for the filing of his motion beyond the one-year period of limitation contained in 28 U.S.C. §2255(f).

Trice reasons that *Johnson* announces a new rule given that it explicitly overrules the prior line of Supreme Court decisions announced in *James v. United States*, 550 U.S. 192 (2007) and *Sykes v. United States*, 131 S.Ct. 2267 (2011). Further, he reasons that the constitutional new rule is a substantive one, as opposed to one of procedure, so that it is presumed to be retroactively applied. *Schirio v. Summerline*, 542 U.S. 348, 352 (2004). *See gen., Teague v. Lane*, 489 U.S. 288 (1989) (recognizing the exception to the general principle of nonretroactivity for cases on collateral review for substantive rules which place certain kinds of primary private individual conduct beyond the power of criminal law making authority to prescribe, or prohibit a certain category of punishment for a class of defendants because of their status or offense). *See*

7

*also, Beard v. Banks*, 542 U.S. 406, 416-17 n.7 (2004). Even in those instances in which the Supreme Court does not expressly hold that a new rule has retroactive application on collateral review, the court nonetheless may through multiple holdings make a new rule retroactive where such holdings logically dictate the retroactivity of the rule. *Tyler v. Cane*, 533 U.S. 656, 668 (2001) ("The holdings must dictate, i.e., permit no other conclusion than that the rule is retroactive.").

Recently, the Sixth Circuit addressed this exact issue in its opinion *In re Windy Watkins*, No. 1:03-CR-00230-2, 2015 WL 9241176 (6th Cir. Dec. 17, 2015), a case which involved a federal defendant who pled guilty to one count of being a convicted felon in possession of a firearm in violation of §922(g)(1). Because the defendant in *Watkins* had three prior felony convictions for arson, felony escape and voluntary manslaughter, the District Court applied the provisions of the ACCA to impose a sentence of 185 months based on the Defendant's status as an armed career criminal. *Watkins*, 2015 WL 9241176 at *1. The Sixth Circuit affirmed the conviction on appeal, and the Supreme Court denied a petition for writ of certiorari. *Id*.

Defendant Watkins then filed an initial §2255 motion to vacate, set aside or correct her sentence on the grounds that her arson conviction did not qualify as a "violent felony" under the ACCA. The District Court denied this initial motion as being untimely under the one-year statute of limitations of 28 U.S.C. §2255(f). Subsequently, the defendant in *Watkins* renewed her motion to vacate in 2014. *Id*. During consideration of the second §2255 petition the U.S. Supreme Court issued its decision in *Johnson*, which caused the defendant to file a motion for leave to file a supplemental brief addressing the impact of the *Johnson* decision on her claim that her felony escape conviction no longer qualified as a predicate offense under the ACCA.

8

The Sixth Circuit granted the motion based on its conclusion that the *Johnson* decision involved a new rule of constitutional law made retroactive to cases on collateral review that was previously unavailable. *In re Watkins*, 2015 WL 9241176 at *2-3. Indeed, the Sixth Circuit concluded in *Watkins* that the question of whether *Johnson* had established a new rule of constitutional law was easily resolved given the "apparent consensus" among the federal circuits that *Johnson* announced a new rule of constitutional law. *Id*. at *4. As for whether *Johnson* applied retroactively to cases pending on collateral review, the Sixth Circuit in *Watkins* acknowledged that a split existed among the circuit courts as to whether *Johnson* applied retroactively on collateral review. *Id*. Nevertheless, the Sixth Circuit concluded that *Johnson* announced a substantive rule of constitutional law that, while not made explicitly retroactive by a decision of the U.S. Supreme Court, nonetheless had been made categorically retroactive to cases on collateral review.

In this regard, the Sixth Circuit explained:

> Because *Johnson* prohibits the imposition of an increased sentence on those defendants whose *status* as armed career criminals is depending on offenses that fall within the residual cause, we agree with the Seventh Circuit that "there is no escaping the logical conclusion that [Supreme] Court itself has made in *Johnson* categorically retroactive to cases on collateral review.

*In re Watkins*, 2015 WL 9241176 at *6 (citing *Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015)). Accordingly, the Sixth Circuit in *Watkins* ultimately concluded that the defendant had made a *prima facie* showing that her claim was based upon a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that previously was not available so that her second or successive §2255 petition could be addressed on its merits.

This holding is certainly an important one for the defendant in *Watkins* and for those defendants whose ACCA status is dependent upon violent felonies that fall within the context of

9

the residual clause of the ACCA.[1] *Watkins* offers no comfort, however, to Trice for one very important reason. Trice's conviction and his status under the ACCA, and specifically 18 U.S.C. §924(e)(2)(B), did not involve the application of the residual clause. The ACCA applied to Trice by operation of the enumerated crimes provision found in the statutory definition for the term "violent felony," rather than the residual clause portion of the definition that follows the enumerate crimes provision.

Burglary is an enumerated crime listed as a violent felony under 18 U.S.C. §924(e)(2)(B). The District Court properly relied upon Trice's three prior felony convictions for burglary in the second degree as the basis for the enhancement of his sentence under the ACCA. Consequently, his sentence enhancement does not in any sense run afoul of *Johnson*, which by its own language applies only to the residual clause and not the enumerated offenses provision of the violent felony definition contained within the Act.

We are not the first court to make this distinction to deny relief to a federal prisoner who seeks to collaterally challenge his or her conviction based upon *Johnson*. One instructive recent case from the U.S. District Court for the Central District of Illinois is *Johnson v. United States*, No. 15-2214, 2015 WL 7274022 (C.D. Ill. Nov. 16, 2015). This other *Johnson* decision involved a federal prisoner who pled guilty to the distribution of more than 28 grams of cocaine base in violation of 21 U.S.C. §841(a)(1) pursuant to a plea agreement that included a waiver of the right to contest the conviction on collateral review. *Johnson*, 2015 WL 7274022 at *1.

---

[1] Under the ACCA, a defendant who has three or more earlier convictions for a serious drug offense or a violent felony is subject to a prison term of a minimum of 15 years and a maximum of life. The ACCA defines the term "violent felony" as :
  [A]ny crime punishable by imprisonment for a term exceeding one year … that - -
   (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
   (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious risk of physical injury to another.*
18 U.S.C. §924(e)(2)(B).

10

Based on his presentence report, defendant Johnson was determined to be a career offender under United States Sentencing Guideline §4B1.1 given his prior convictions for residential burglary and unlawful delivery of cocaine. Consequently, he received a 180-month sentence of imprisonment that defendant Johnson subsequently chose to challenge on collateral review, arguing that he was improperly sentenced as a career offender based upon *Johnson v. United States*, 135 S.Ct. 2551 (2015). The Illinois District Court dismissed this argument for two reasons, both of which would appear to have equal application to the present case.

First, the court concluded that the express provisions of defendant Johnson's plea agreement contained an explicit waiver of his right to bring a collateral attack on his sentence so that as long as the plea agreement itself was knowing and voluntary, the waiver of the right to appeal and to pursue collateral relief must be enforced. *Id*. (citing *United States v. Wagner*, 103 F.3d 551 (7th Cir. 1996)). Because the waiver in defendant Johnson's case was found to be express and unambiguous, and because the record clearly showed that the waiver was made knowingly and voluntarily, the district court initially concluded that defendant Johnson was foreclosed from any collateral attack on his conviction.

The same conclusion would appear to apply with equal force now. Nowhere does Trice argue that his plea agreement was unknowing or involuntary. To the contrary, the provisions of the agreement in paragraph 10 set forth above clearly contain an express waiver of the right to direct appeal or to collateral attack. The District Court expressly advised Trice of both waivers during the change of plea proceedings and Trice acknowledged his understanding of them. Therefore, on this basis alone his present §2255 motion would be subject to immediate dismissal. *See, Tucker v. Snyder-Norris,* No. 0:15-53-HRW, 2015 WL 5826825 at *3 (E.D. Ky. Oct. 1, 2015) (holding that the express waiver provisions of the defendant's plea agreement precluded

him from collaterally attacking his sentence based on the unconstitutional vagueness of the residual clause as announced in *Johnson*, 135 S.Ct. 2551 (2015)); *Green v. United States*, No. 8:08-CR-348-T-17TGB, 2011 WL 307701 (enforcing the collateral attack waiver provisions of the defendant's plea agreement to preclude review of a challenge to his sentence enhancement under the ACCA).

The Illinois District Court in *Johnson* then turned to the second reason that defendant Johnson could not obtain relief. As the court explained:

> *Johnson* only invalidated the residual clause; the decision did not invalidate the specifically enumerated categories of conduct set forth in §924(e)(2)(B)(ii), one of which was burglary. 135 S.Ct. at 2561-62. Similarly, under the career offender enhancement in §4B1.2(a)(2) enumerated offenses that constitute a "crime of violence" include the burglary of a dwelling. As Johnson admits that he received the career offender enhancement based on a burglary, and his presentence report indicates that the prior conviction was a residential burglary, the Supreme Court's decision in *Johnson* does not apply to afford relief in this situation.

*Johnson*, 2015 WL 7274022 at *3.

Although the *Johnson* decision of the Illinois District Court involved a career offender status under the U.S. sentencing guidelines, the reasoning nonetheless applies with equal force to those sentences enhanced under the ACCA based on the enumerated criminal offenses contained in the violent felony definition statute rather than the residual clause. Indeed, a separate district court located in the Eastern District of Kentucky reached this exact conclusion in *Jordan v. Butler*, No. 6:15-133-KKC, 2015 WL 5612274 (E.D.Ky. Sept. 23, 2015).

*Jordan* involved another federal inmate who sought to file a collateral attack on his conviction for being a felon in possession of a firearm, possession of marijuana with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. *Jordan*, 2015 WL 5612274 at *1. Because Jordan qualified as a career offender under the Armed Career

Criminal Act, 18 U.S.C. §924(e), he received the mandatory minimum of 180 months sentence for his §922(g) conviction for being a felon in possession of a firearm, which was ordered to be served consecutively with two 60-month terms of imprisonment on the remaining two drug-related counts for a total sentence of 240 months. *Id*. The Sixth Circuit affirmed Jordan's conviction and sentence on direct appeal. Jordan then filed an unsuccessful initial motion to vacate, arguing that his counsel was ineffective for failing to challenge the use of his prior Tennessee third-degree burglary conviction as a "violent felony" under the ACCA.

This argument was rejected by the trial court based on the existence of Sixth Circuit authority that expressly held a Tennessee conviction for third-degree burglary qualified as a violent felony under one of the four enumerated offenses of §924(e)(2)(B)(ii). *Id*. (citing *United States v. Caruthers*, 458 F.3d 459, 475 (6th Cir. 2006)). Jordan then elected to bring a subsequent post-conviction motion pursuant to 28 U.S.C. §2241 in reliance on a recent decision of *Johnson v. United States*, 135 S.Ct. 2551 (2015). In rejecting Jordan's most recent post-conviction challenge, the District Court for the Eastern District of Kentucky initially determined that it could not reach the merits of his claims based on its conclusion that the rule announced in *Johnson* could not be raised pursuant to §2241, but rather must be brought by motion under §2255.

The court then continued, however, to hold that even if it could reach the merits of the petition, the Supreme Court decision in *Johnson* was not helpful to Jordan, explaining:

> The trial court noted that Johnson's Tennessee conviction for third-degree burglary constituted a "violent felony" because "burglary" is one of the four **enumerated** offenses in §924(e)(2)(B)(ii). *Johnson* invalidated only the "residual clause" of §924(e)(2)(B)(ii) …, but clearly stated that "today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S.Ct. at 2563. Because *Johnson* does not undermine the validity of sentences enhanced because the defendant

13

>committed one of the enumerated offenses, including burglary, that decision does not assist Jordan.

*Jordan*, 2015 WL 5612274 at *3.

The same holding applies with equal force in the present case. Burglary is an enumerated offense that does not fall within the residual clause of §924(e)(2)(B)(ii). Consequently, Trice's sentence enhancement under the ACCA is not called into question by *Johnson*, so that even if Trice's waiver of the right to bring a collateral attack were overlooked by the Court, the outcome of the present proceedings would be no different. Trice is not entitled to relief under §2255 as his sentence does not run afoul of the U.S. Constitution or the laws of the United States.

**Certificate of Appealability.**

The final question is whether Trice is entitled to a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c). A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c). A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c). *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002). *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing

14

28 U.S.C. § 2253(c)). A state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Trice has not satisfied the standard for issuance of a COA. Reasonable jurists could not debate that his sentence was lawfully enhanced due to his three prior state burglary convictions. These convictions do not fall within the residual clause of the ACCA. They therefor remain unaffected by the recent decision of the U.S. Supreme Court announced in *Johnson*. Even were that not so, Trice knowingly and voluntarily agreed to waive his right to bring the present collateral attack. Accordingly, multiple and irrefutable reasons exist to deny his claim for § 2255 relief.

## RECOMMENDATION

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate filed by the Defendant be **DENIED** and that Trice be denied a certificate of appealability.

## NOTICE

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2); Fed. R. Civ. P. 72(b)

Copies to Counsel of Record